**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**NICHOLAS DINET**                                              **CIVIL ACTION**

**VERSUS**                                                          **NO.  05-3778**

**HYDRIL COMPANY**                                      **SECTION "C" (3)**
                                                                    **28 U.S.C. 636(c)**

**OPINION**
**REGARDING POST-TRIAL MOTIONS FOR ATTORNEY's FEES**

Before the Court are the following post-trial motions, to wit:

(1)  Hydril Company's Motion for New Trial (Doc. # 81) seeking a favorable judgment on its counterclaim for attorney's fees  pursuant to LSA-R.S. 23:303B; and

(2)  Nicholas Dinet's Motion for Attorney's Fees and Costs  (Doc. #79) in the total amount of $66,269.85 filed pursuant to LSA- R.S. 22:303A.

 On October 12, 2006, the jury returned a verdict in favor of the plaintiff for $80,000.00 on his employment discrimination claim (racially hostile work environment).  Considering the verdict, the Court issued Judgment in favor of the plaintiff in the full amount of $80,000.00, plus attorney's fees and costs. Additionally, judgment issued against the defendant employer on its counterclaim for attorney's fees.  On November 8, 2006, Hydril's Motion for New Trial and Dinet's Motion for Attorney's Fees were the subject of oral hearing, following which the matters were taken under submission. For the following reasons, the Hydril Company's Motion (Doc. #81) is DENIED and the Nicholas Dinet's Motion (Doc.#79) is GRANTED IN PART in the full amount of **<u>$42,546.66</u>**  (*i.e.*,  $34,555.50 in Attorney Fees +  $5,766.75 in Paralegal Fees + $2,224.41 Court Costs).

1

## RELEVANT BACKGROUND

Nicholas Dinet ("Dinet") is the sole plaintiff in this employment discrimination lawsuit against his former employer, Hydril Company ("Hydril").   Dinet's employment discrimination lawsuit was the subject of a three-day jury trial.  His claims were for racial discrimination under La. R.S. 23:332(A) and the related claim of intentional infliction of emotional distress under La. Civ. Code Art. 2315.  The matter of attorney's fees was severed pursuant to the pretrial conference, the Court having determined that any such "reasonable" award was committed to the trial judge's discretion after having first considered the record , the applicable law and the jury verdict.

On October 12, 2006, the jury reached a verdict in favor of the plaintiff on his disparate treatment/racial hostile environment claim awarding $80,000 in general damages, which was entered by the Court;[1] however, the jury did not find the requisite degree of severe/pervasive conduct and or the requisite degree of severe emotional harm to render a verdict in favor of the plaintiff on his claims of constructive discharge and/or intentional infliction of emotional distress.  More particularly, both of the aforesaid claims were based on precisely the same conduct (*i.e.*, racially hostile work environment and race-based disparate treatment), which plaintiff argued was sufficiently egregious so as to meet the heightened degree of severity and/or pervasiveness necessary to find liability for constructive discharge and intentional infliction of emotional distress under Louisiana law.   Plaintiff's separate claim of racially motivated failure to promote to back up supervisor was not successful.[2]

---

[1]*See* Judgment dated October 13, 2006 (Doc. # 78).

[2]*See* Verdict Form dated October 12, 2006 (Doc. # 76).

2

Plaintiff now seeks reasonable attorney's fees and court costs as the "prevailing" party pursuant to LSA-R. S. 23:303A. The defendant also seeks judgment in its favor on its counterclaim for attorney's fees pursuant LSA- R. S. 23:303B, arguing that the claims upon which the plaintiff did not prevail (*i.e.*, constructive discharge, intentional infliction of emotional distress and failure to promote), were "frivolous" within the meaning of Louisiana law.

## APPLICABLE LAW

Louisiana's Discrimination in Employment Law, La. R. S. 23:303 provides in pertinent part:

> A. A plaintiff who has a cause of action against an employer, employment agency, or labor organization for a violation of this Chapter may file a civil suit in district court seeking compensatory damages, back pay, benefits, reinstatement, or if appropriate, front pay, reasonable attorney's fees, and court costs. In such a suit, the venue shall be the district court in the parish which the alleged violation occurred.
>
> B. A plaintiff found by a court to have brought a *frivolous* claim under this Chapter shall be held liable to the defendant for reasonable damages incurred as a result of the claim, reasonable attorney's fees, and court costs.[3]

## DISCUSSION

### 1. Hydril's Motion for New Trial on its Counterclaim for Attorney's Fees.

As aforestated, Hydril moves this Court to revisit the judgment, inasmuch as it fails to grant an award of attorney's fees considering the partially favorable verdict and its counterclaim based upon LSA- R. S. 23:303B. Specifically, Hydril contends that the plaintiff's claims of racially motivated failure to promote, race-based constructive discharge and intentional infliction of emotional distress based upon racially discriminatory conduct in the work place were

---

[3]LSA- R. S. 23:303A and B (italicized emphasis added).

3

"frivolous."  More particularly, defendant argues that: (1) Hydril's uncontroverted evidence established unequivocally that plaintiff's race-based failure to promote was utterly false; (2) Dinet failed to prove that his stomach problems were the result of work-place racially related stress; and (3) Plaintiff conceded during the charge conference that he had no economic damages (the remedy for a claim of constructive discharge) and that, in any event, the jury rejected this particular claim.

All of the plaintiff's claims were predicated on Louisiana's Employment Discrimination Law and, with the exception of *race*-based failure to promote, all were predicated on severe and pervasive racial harassment/hostile work environment.  Albeit separate as a matter of law from plaintiff's hostile work environment claim, plaintiff's failure to promote claim was similarly disparate treatment predicated upon unlawful discriminatory animus (race).

The jury rendered a verdict in favor of the plaintiff finding that: (1) Dinet was subjected to unlawful work place racial harassment and/or a racially hostile work environment; and (2) $80,000 in general damages was sufficient to compensate plaintiff for the pain, suffering, mental anguish, emotional distress, humiliation and loss of enjoyment of life proximately caused by the defendant's unlawful conduct.  The jury's finding that Hydril's conduct did not rise to the degree of severity or pervasiveness necessary for a finding of liability on the ancillary/related racial employment discrimination claims of intentional infliction of emotional distress and constructive discharge[4]  pales in comparison to the jury's finding of liability against Hydril on plaintiff's main

_____

[4]To prove constructive discharge in a hostile environment case, plaintiff was required to show that the abusive environment became so intolerable that his resignation qualified as a fitting response to the workplace environment.  *See Chaney v. Home Depot, USA, Inc*., 2006 WL 2521594 * 6 (La. App. 4th Cir. August 16, 2006).

claim in this employment discrimination lawsuit (racially hostile work environment).  It is clear from all the facts and circumstances of this case and the jury's verdict that plaintiff was the prevailing party.

Addressing the issue of "frivolousness" under state law, the Court finds that Title VII's "frivolousness" analysis is instructive.  Similar to its counterpart under Louisiana law  (*i.e.*, La. R. S. 23:303B),  Title VII authorizes an award of attorney's fees to a prevailing defendant if the Court finds that the plaintiff brought a "frivolous" discrimination claim.[5]   Analysis of a request for fees must begin with identification of the movant as plaintiff or defendant.  Next the Court must determine whether the defendant was a "prevailing party" and,  upon concluding that the movant is a "prevailing party,"  the court, in its discretion, may then decide whether the movant is entitled to a reasonable fee award.[6]

While a prevailing Title VII plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances, the Supreme Court  set out a much more rigorous standard for awarding attorney's fees to prevailing defendants.[7]   In particular, while Congress wanted to " 'make it easier for a plaintiff of limited means to bring a meritorious suit,' " it also "wanted to protect defendants from burdensome litigation having no legal or factual basis."[8]   The same can be said for Louisiana's Employment Discrimination law, which was patterned after the federal statute.

A district court may, in its discretion, award attorney's fees to a prevailing Title VII

---

[5]Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 413-14 (1978).

[6]*Dean v. Riser*, 240 F.3d 505, 508 (5th Cir.2001).

[7]*See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416 (1978).

[8]*Dean*, 240 F.3d at 508 (*quoting Christiansburg*, 434 U.S. at 420).

defendant only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."[9]  La. R. S. 23:303B similarly requires a finding that the plaintiff  brought a "frivolous" employment discrimination claim.[10]  A suit is frivolous only if it is "so lacking in arguable merit as to be groundless or without foundation."[11]  Attorney's fees for a prevailing defendant, thus, is presumptively unavailable unless a showing is made that the underlying civil rights suit was "vexatious, frivolous, or otherwise without merit."[12]

The mere dismissal of a plaintiff's case does not establish that the claim itself was unreasonable, frivolous, or groundless and the burden of showing these underlying factors remains upon the defendant.[13]  When determining whether a plaintiff's civil rights action is frivolous, the court may consider the following factors: (1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the court dismissed the case or held a full trial.[14]

Even if plaintiff's employment discrimination claims are dismissed before they reach the

---

[9]*Christiansburg*, 434 U.S. at 421.

[10]LSA- R. S. 23:303B.

[11]*Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir.1999).

[12]*Dean*, 240 F.3d at 508.

[13]*Id.* at 512. *See e. g., Vitale v. Georgia Gulf Corp.,* 82 Fed.Appx. 873, 2003 WL 22922292 (5th Cir. 2003) (unpublished) (finding that the district court did not abuse its "sound discretion" in denying attorney's fees and holding that the district judge properly granted judgment as a matter of law dismissing plaintiff's ADA claim and denied attorney's fees).

[14]*Myers v. City of West Monroe*, 211 F.3d 289, 292 (5th Cir.2000).

jury, that is insufficient by itself to support a finding of frivolity.[15]  Rather than relying upon the outcome of a case, the court must inquire "'whether the case was so lacking in merit that it was groundless.'"[16]  "To avoid discouraging all but 'airtight claims,' courts focus on whether a plaintiff's claim is colorable and of arguable merit."[17]  "When a plaintiff presents some credible evidence to prove his claim, he has shown that his case has colorable merit; consequently, the prevailing defendant is not entitled to attorney's fees."[18]

As to the first factor, plaintiff's race-based employment discrimination lawsuit survived the summary judgment stage.  Hydril's Rule 50 motion for judgment as a matter of law at the close of the case was denied.  Moreover, the verdict itself belies the defendant's argument that the "frivolousness" standard is met in this case.

Dinet established a *prima facie* case of race-based employment discrimination, including failure to promote,[19] hostile work environment and constructive discharge.[20]  Most notably,

---

[15]*See id.* at 293.

[16]*Hahn v. City of Kenner*, 1 F.Supp.2d 614, 617 (E.D.La.1998) (*citing United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir.1991)).

[17]*Id.*

[18]*Id.*

[19]An employee presents a prima facie case of discrimination in a failure to promote case by demonstrating four elements: (1) that the employee is a member of a protected class; (2) that he sought and was qualified for the position; (3) that he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications. *Berry v. City of Bossier,* 911 So.2d 333, 342 (La. App. 2nd Cir. 2005) (*citing Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004)).

[20]A plaintiff who advances a compound hostile-environment/constructive discharge claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign.  *See Pennsylvania State Police v. Suders,* 542 U.S. 129, 147-48 (2004) (noting that Suders presented a "worse case" scenario, *i.e.*, "harassment ratcheted up to the breaking point");

plaintiff further prevailed on his claim that Hydril supervisors' work place race-based harassment/hostile work environment was sufficiently abusive (*i.e.*, *severe* and/or *pervasive*) and garnered a verdict of liability on the hostile work environment claim. Concomitantly, the jury unanimously agreed that Hydril failed to take proper remedial action. Moreover, Hydril did not prevail on its affirmative defense that: (a) the defendant exercised reasonable care to prevent and promptly correct any harassing behavior; and (b) plaintiff unreasonably failed to take advantage of preventive or corrective opportunities provided by Hydril or to otherwise avoid harm.

Dinet's claims of intentional infliction of emotional distress[21] and constructive discharge[22] were essentially aggravated cases of harassment.[23] In addition to the facts offered in

---

*Vallecillo v. U. S. Dept. of Housing and Urban Development*, 155 Fed.Appx. 764, 2005 WL 3115080 * 5 (5th Cir. 2005) (noting that plaintiff's claim can be regarded as an aggravated case of hostile work environment and that proof of specific intent to the employee's resignation is not required), *cert. denied,* 126 S.Ct. 2961 (June 26, 2006).

[21]The essential elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant which exceeds the bounds of decency; (2) causes severe emotion distress; and (3) was either intended or would be substantially certain to follow commission of the outrageous conduct. Recognition of a cause of action for IIED in a workplace environment has generally been limited by Louisiana courts to cases involving a pattern of deliberate, repeated harassment over a period of time which results in severe suffering of an ilk that no reasonable person would be expected to endure. *Ware v. Cleco Power, LLC*, 90 Fed.Appx. 705, 2004 WL 133869 * 4 (5th Cir. 2004) (*citing White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991)); *Smith v. Amedisys, Inc.*, 298 F.3d 434, 449 (5th Cir. 2002); *Bustamento v. J. D. Tucker*, 607 So.2d 532, 538 (La. 1992).

[22]Mere harassment alone is not sufficient; rather plaintiff must show "aggravating factors" to justify the departure, which may include assignment to menial/degrading work, and badgering, harassment or humiliation calculated to encourage the employee's resignation. *Hockman v. Westward Communications, LLC,* 407 F.3d 317, 331 (5th Cir. 2004); *Carrington v. Vertex Aerospace, LLC*, 2006 WL 504196 *4 (W. D. Tex. Jan. 19, 2006) (noting plaintiff need not prove specific intent but must nonetheless make a greater showing of harassment than that required for hostile work environment); *Vallecillo*, 2005 WL 3115080 * 5 (5th Cir. 2005) (same).

[23]As in *Suders*, the fact finder in Dinet's case was tasked with contemplating the question of whether the plaintiff's employment ended as a result of the harassment. *See Suders,* 542 U.S.

support of his hostile environment claim, plaintiff offered testimonial and graphic evidence of racially motivated death threats directed at plaintiff by a Hydril supervisor.   Dinet's ancillary claims varied from his main claim only by degree – *i.e.*, harassment allegedly ratcheted up to the breaking point.[24]

Tasking Dinet, the adjudicated victim of severe and/or pervasive workplace racial harassment, to pay the harassing employer's fees incurred defending against plaintiff's lawsuit alleging same smacks of unfairness.  Here, most of the plaintiff's various theories of recovery are predicated on essentially the same racially discriminatory conduct.

The apparent purpose of LSA-R.S. 23:303B is to give the defendant some financial relief from the expense of a defense against a frivolous discrimination lawsuit and to deter the filing of such "frivolous" discrimination lawsuits.  In this regard, it is the filing of a frivolous lawsuit which causes the defense to incur expenses.  The Court highlights that plaintiff's lawsuit was singularly predicated on race-based discrimination in employment.   This is not a case where the plaintiff threw in every brand of discrimination conceivable under the facts.

The Court now turns to Hydril's argument regarding the absence of proof of lost wages or plaintiff's concession with respect to economic damages.  This Court recognizes that a

---

at 141 (commenting that, "[u]nder the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes").

[24]*Id.*; *Tutman v. WBBM-TV, Inc.,* 209 F.3d 1044,  (7th Cir. 2000) ("Working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because in the 'ordinary' case, an employee is expected to remain employed while seeking redress."), *cert. denied,* 531 U.S. 1078 (2001).  *See also Bustamento*,  607 So.2d at 538 (noting that both intensity and duration of the distress are factors to be considered in determining whether a pattern of conduct is actionable).

successful constructive discharge claim is generally remedied by consideration of economic damages an employee suffers because of the loss of his job.[25]  However, the Court remains unconvinced that evidence of economic damages has any bearing on either the merits of plaintiff's employment discrimination claims or the "frivolousness" inquiry under LSA- R. S. 303B.  The failure of proof  with respect to economic damages is not necessarily fatal in an employment discrimination case.  A favorable verdict could include an award of nominal damages for the violation of a plaintiff's civil rights in a case where the plaintiff mitigated his damages and obtained more lucrative employment.

Speaking of nominal sums, the Court now addresses the second factor (settlement offer).  Hydril did in fact offer to settle plaintiff's case; however, the amount actually offered to settle plaintiff's discrimination lawsuit in its entirety was too little too late – i.e., a mere fraction of the damages awarded.  Additionally, the offer could not have included any compensation for costs/fees incurred prosecuting plaintiff's employment discrimination lawsuit.

As to the third factor (full trial/judgment as a matter of law), the Court conducted a full jury trial on the merits.  Having presided over the case, this Court is again prompted to find that Dinet claims were sufficient to meet the frivolity test.  Even in retrospect, this Court cannot find that plaintiff's claims were so lacking in merit that they can be characterized as either groundless or frivolous.

Dinet presented credible, unrebutted  photographic evidence illustrating the merits of his employment discrimination lawsuit against Hydril.   The jury verdict recognizes that the racially

---

[25]*See Robinson v. Healthworks International, LLC,* 837 So.2d 714, 719-20 (La. App. 2nd Cir. 2003).

hostile work environment was not remediated during plaintiff's tenure.  Indeed, graphic vestiges commemorating the unwholesome work environment remained as late as plaintiff's Rule 34(b) inspection of the premises.

What controls in awarding attorney's fees in this case is the recognition that Nicholas Dinet prevailed under La. R. S. 23:303 *et. seq*., predicated on facts indicating that he was the victim of pervasive and/or severe workplace race-based discriminatory conduct/practices. Plaintiff was successful in prosecuting to judgment his bedrock claim (racially hostile work environment); however, the particular jury empaneled was not convinced that defendant's conduct was sufficiently outrageous and/or the plaintiff's resulting emotional distress sufficiently severe to satisfy the requisite heightened degree of proof of his ancillary claims.  Nevertheless, the jury returned a verdict awarding substantial compensatory damages – *i.e.*, far more than Hydril offered to settle plaintiff's entire lawsuit, including his LSA-23:303A claim for attorney's fees and costs.

It follows inescapably that this is a case in which unlawful race discrimination in the workplace has  been established.  The Court finds Hydril's argument disparaging the success achieved by plaintiff in this case unconvincing.   Plaintiff's racially hostile work environment claim can fairly be described, singly or collectively, as the central issue in the case.  The circumstances presented in this case leave no doubt that Hydril should not be rewarded and Dinet's recovery should not be diminished because it now appears, in retrospect, that plaintiff's counsel undertook to prove too much.

In conclusion, this Court is convinced that Dinet's ancillary race discrimination claims were not without any basis in law or in fact such that they could be considered unreasonable,

11

frivolous, groundless or without any foundation.[26]  Therefore, Hydril is not entitled to an award

of attorney's fees pursuant to La. R. S. 23:303B.  Accordingly, defendant's  motion for new trial

is DENIED.

### 2. Plaintiff's Motion for Attorney's Fees and Costs

Having resolved the issue that plaintiff is the "prevailing" party, the Court now addresses

plaintiff's motion seeking a determination of the amount of reasonable attorney fees and costs

owed pursuant to La. R. S. 23:303A.   Similar to its federal counterpart, an award of attorney's

fees under Louisiana's Employment Discrimination Law is committed to the sound discretion of

the presiding trial judge.  Among the factors to be considered in determining a reasonable fee

award are: (1) the ultimate result obtained; (2) the amount of money involved; (3) the extent and

the character of the work performed; (4) the legal knowledge, attainment and skill of the

attorney; and (5) the number of appearances made.[27]

In this district, for all cases where attorney's fees are sought, the party desiring the award

---

[26]*See e.g., Lege v. N.F. McCall Crews, Inc.,* 625 So.2d 185, 190 (La. App. 3rd Cir. 1993) (finding no abuse of discretion in the trial court's judgment denying defendants' request for attorneys' fees pursuant to La. R. S. 46:2256(C) for attorney's fees as the "prevailing" party but assessing fees for having to answer plaintiff's appeal), *cert. denied,* 627 So.2d 638 (La. 1993).

[27]*See Motton v. Lockheed Martin Corp.,* 900 So.2d 901, 918 (La. App. 4th Cir.), *cert. denied,* 904 So.2d 704 (La. 2005); *Brooks v. Southern University and Agricultural and Mechanical College,* 877 So.2d 1194, 1228 (La. App. 4th Cir.) (finding the trial court did not abuse its discretion by awarding as attorney's fees a percentage (40%) of the total damage amount), cert denied, 888 So.2d 208 (2004);  *Alphonse v. Omni Hotels Management Corp.,*  643 So.2d 836, 841(La. App. 4th Cir. 1994).  *See also Dang v. M-I Holdings, LLC,* 2004 WL 2004696 (E. D. La. September 4, 2004) (employing the Lodestar method of calculating attorney's fees owed to a prevailing plaintiff under La. R. S. 23:303); *Hanley v. Doctor's Hospital of Shreveport,* 821 So.2d 508, 527 (La. App. 2nd Cir. 2002) (employing the Lodestar method routinely used in federal court and finding $124,130.00 in attorney's fees due in a sexual harassment case).

is required to submit to the court a contemporaneous time report reflecting the date, time involved and nature of services rendered. LR 54.2 (2004).  The report shall be in both narrative and statistical form and provide hours spent and justification therefor. *Id.*   For good cause shown, however, any judge may relieve counsel of such reporting obligation. *Id*.  Here, plaintiff's counsel has submitted a report in narrative and statistical form with plaintiff's motion and fee detail reflecting the date, time involved and the general nature of services rendered.

### *The Johnson Factors*

Once a court has determined that a movant is entitled to attorney's fees, then it must determine the amount, which is subject to this court's discretion.[28]   The calculation of reasonable attorney's fees involves a well-established two-step process.[29]   First, the court calculates a "lodestar" fee by multiplying the reasonable number of hours spent on the case by the reasonable hourly rates for the participating lawyers.[30]   Second, the court considers whether the "lodestar" should be adjusted upward or downward depending on the circumstances of the case under the twelve *Johnson* factors.[31]

The *Johnson* factors are:

(1) time and labor required; (2) novelty and difficulty of issues; (3) skill required; (4) loss of other employment in taking the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) counsel's experience, reputation, and ability; (10) case undesirability; (11) nature and

---

[28]*Hopwood v. Texas*, 236 F.3d 256, 277 (5th Cir.2000), *rehearing en banc denied,* 248 F.3d 1141 (5th Cir.),  *cert. denied*, 533 U.S. 929 (2001).

[29]*See Migis v. Pearle Vision, Inc*., 135 F.3d 1041, 1047 (5th Cir.1998).

[30]*Id.*

[31]*Id.*; *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974).

length of relationship with the client; and (12) awards in similar cases.[32]

After considering the twelve Johnson factors, the court may adjust the "lodestar" upward or downward.[33]   While *Johnson* set forth twelve factors, the Fifth Circuit has singled out four of the factors as most important: (1) the time and labor involved; (2) the customary fee; (3) the amount involved and the results obtained; and (4) the experience, reputation, and ability of counsel.[34]   The Supreme Court has held that "the most critical factor" for a fee award in a civil rights case "is the degree of success obtained."[35]   "'The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.'"[36]

It is well settled that  requests for attorney's fees should not spawn ancillary major litigation.[37]   The Fifth Circuit has emphasized that most of *Johnson* factors are reflected in the lodestar amount and cannot be used to adjust the lodestar upward or downward.[38]   The lodestar is presumptively reasonable and should be enhanced or reduced only in exceptional cases.[39]

---

[32]*Rutherford v. Harris County, Texas*, 197 F.3d 173, 192 n. 23 (5th Cir.1999) (citing *Johnson*, 488 F.2d at 717-19).

[33]*Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir.1993).

[34]*See Migis*, 135 F.3d at 1047.

[35]*Id.* (*citing Farrar v. Hobby*, 506 U.S. 103, 114 (1992) and *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

[36]*Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941.

[37]*Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983);

[38]*Walker v. United States Dept. of Housing and Urban Dev.,* 99 F.3d 761, 771 (5th Cir. 1996).

[39]*Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir. 1993).

In this case, plaintiff's counsel contends that he has complied with *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir.1974) and that he has submitted fee detail which is sufficient to allow the court to engage in the requisite analysis.  Plaintiff contends that none of the relevant factors militate in favor of deviating from the standard "lodestar" figure and that he is entitled to reimbursement in the full amount of $64,000.00.

For its part, the defendant contests the reasonableness of plaintiff's counsel hourly rate of $175.00, but does not contest the paralegal's hourly rate of $55.00.  In this regard, defendant notes that the plaintiff has not filed an affidavit addressing the prevailing market rate for novice employment discrimination attorneys with Cox's years of experience.  Defendant highlights that this is the first employment discrimination case that plaintiff's counsel has ever prosecuted.  Additionally, defendant further suggests that downward adjustment is warranted considering plaintiff's counsel's failure to exercise billing judgment and to account for plaintiff's limited success.

### *Reasonable Hourly Rate*

Attorneys' fees are to be calculated at the prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation.[40]   For the purposes of determining lodestar for attorney fees, the relevant community is the one in which the district court sits regardless of the fact that much of the work must be performed away from district court's community.[41]   The applicant bears the burden of producing

---

[40]*Blum v. Stenson*, 465 U.S. 886, 895 (1984).

[41]*See Green v. Administrators of Tulane Educational Fund,* 284 F.3d 642, 662 (5th Cir. 2002).

satisfactory evidence that the requested rate is in line with prevailing market rates.

As an initial matter, the Fifth Circuit has held that, when an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed. When that rate is not contested, it is *prima facie* reasonable.[42]   The rate requested by Cox cannot be considered *prima facie* reasonable because it is contested by the defendant.

Cox apprised the Court that he has been practicing in the area since 1999 and that Dinet's lawsuit  was his first employment discrimination case.  While the Court must take into consideration Cox's seven (7) years as a practicing attorney, first in New Orleans with a local admiralty firm and later in Lafitte, Louisiana, as a solo practitioner, the Court is not convinced that Cox's $175.00 hourly rate is commensurate with the prevailing market rate for counsel with comparable experience and expertise in the Greater New Orleans area, *i.e*., the relevant market. A review of cases decided in this Court reveals that the hourly rate of $175.00 is the median range of the spectrum for seasoned employment discrimination attorneys, even for work performed post-Katrina.[43]   The Court has determined that the hourly rate of $150.00 more

---

[42]*Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir.1995).

[43]*See Green v. Administrators of Tulane Educational Fund,* 284 F.3d 642, 662 (5th Cir. 2002) (affirming an award of $175.00 an hour to an attorney who had practiced employment law for fourteen years);  *Motton v. Lockheed Martin Corp*., 900 So.2d 901, (La. App. 4th Cir. 2005) (finding against Lockheed that plaintiff's counsel's hourly rate of $200.00 was not a rate in excess of the community standards and amending to assess additional fees for appellate work at the same hourly rate); *GMAC Commercial Mortgage Corp. v. Chateau Deville Apartments Partnership*, 2003 WL 21674467 (E. D. La. July 16, 2003) (finding that $150.00 per hour was a reasonable billing rate for a second-year associate); *Smith v. Berry Co.*, 1997 WL 736697, at *4 (E. D. La. Nov.21, 1997) (holding that $150.00 per hour was consistent with the prevailing market rate at the time the work was performed for counsel with eleven years experience practicing employment discrimination law);  *Millon v. Johnston*, 1999 WL 358968 at *5 (E. D.

closely approximates the prevailing market rates in this community for similar services by

attorneys who have skills, experience, and reputation reasonably comparable to that of plaintiff's

counsel in this case.[44]

### Hours Billed by Plaintiff'sCounsel

#### 1. Billing Judgment/Time and Labor Involved

Next, the Court must determine the reasonable number of hours that plaintiff's counsel

expended on the litigation.  The burden of proving the reasonableness of the hours expended is

on the fee applicant.[45] As a general proposition, all time that is excessive, duplicative and/or

unproductive should be excised from any award of attorney's fees.[46]  Attorneys must exercise

"billing judgment" by "writing off unproductive, excessive, or redundant hours" when seeking

fee awards.[47]  The fee seeker's attorneys "are charged with proving that they exercised billing

---

La. May 28, 1999) (finding that for the period prior to 1999 the hourly rate of $150.00 was reasonable for counsel with ten years experience); *L & L Oil Co. v. Lefkowitz*, 1996 WL 56464 (E.D.La. Feb.9, 1996) (finding that for the period predating 1996 the rate of $140 .00 per hour was the *median range* for an attorney with less than ten years of experience in the Eastern District).

[44]*See Downey v. Strain*, 2006 WL 1581234 (E. D. La. June 5, 2006) (Shushan, M. J.) (finding the hourly rate ($225.00) for the trial attorney with twenty-four years experience and the hourly rate of ($175.00) for the attorney with thirteen years experience that assisted at the trial are reasonable); *Camp v. Progressive Corp.,* 2004 WL 2149079 (E. D. La. Sept. 23, 2004) (Wilkinson, M. J.) ( finding the hourly rates of $225.00 for partners and $140.00 for associates reasonable based upon his knowledge of the prevailing market rates in this legal community and his familiarity with the qualifications and expertise of plaintiffs' counsel and recent awards of reasonable attorney's fees in this district).

[45]*Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 528 (5th Cir. 2001).

[46]*Watkins*, 7 F.3d at 457.

[47]*Walker*, 99 F.3d at 769.

judgment."[48]   When billing judgment is lacking, the court *must* exclude from the lodestar

calculation the hours that were not reasonably expended.[49]

Defendant specifically challenges excessive billing and hours not reasonably expended in

furtherance of plaintiff's successful claim.  Hydril further suggests that excessive hours may be

due to the plaintiff's counsel's lack of expertise in employment discrimination litigation.

Additionally, Hydril contends that plaintiff's counsel should not be reimbursed by the defendant

at all because of the lack of sufficient evidence to support the 445.6 hours billed in this case.

Since Dinet is a prevailing party and has recovered more than nominal damages,

awarding him a low fee or, in effect, no fee would be inherently unfair and inconsistent with

existing precedent.  As discussed below, the fee requested must be reduced consistent with the

teachings of *Hensley*, *Farrar and Migis, supra.*  Plaintiff did not specifically address the

defendant's arguments regarding the elimination of fees billed in connection with prosecuting

unsuccessful claims or his failure to use billing judgment.

Defendant's objections to the plaintiff's application for attorneys' fees without reduction

are well-founded in part.  A review of the plaintiff's fee application shows charges for imprudent

duplication of effort and the failure to exercise billing judgment as required by the law of the

Fifth Circuit.  "Normally, clerical or secretarial costs are part of an attorney's office overhead and

are reflected in the billing rate."[50]   It is well established that "when an attorney performs a task

---

[48]*Id.* at 770.

[49]*Hensley*, 461 U.S. at 434.

[50]*Hagan v. MRS Assocs., Inc.*, 2001 WL 531119, at *9 (E. D. La. May 15, 2001) (Africk, M.J.) (*citing Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir.1995)), *affirmed,* 281 F.3d 1280 (5th Cir. 2001).

that could be handled by clerical staff, the opponent should not be charged the attorney's hourly rate."[51]  Clerical work includes copying, typing, labeling, faxing, mailing, filing and/or delivering  pleadings/documents.  Additionally, the Court must consider whether some of the entries are too vague to determine whether they represent a reasonable use of time.[52]

This Court notes that the captioned matter proceeded to judgment only after a full jury trial on the merits and that the plaintiff prevailed on his main claim.  Substantial discovery, including depositions, were mainly directed to plaintiff's racially hostile environment claim.  Plaintiff prevailed in large part with respect to the defendant's motion for summary judgment which was the subject of supplemental briefing and oral argument.

In light of defendant's objections and in accordance with the standards set forth in *Hensley*, this Court has undertaken a line-by-line review of the time records in conjunction with the parties' written submissions for the purpose of identifying and excluding any "excessive, redundant, or otherwise unnecessary" hours.  Where, as here, there is no or scanty evidence of billing judgment, the proper remedy is to reduce the hours awarded by a percentage intended to

---

[51]*Id.   See also Jenkins,* 491 U.S. 274, 288 n.10 (1989) (purely clerical and other non-legal tasks should not be billed at attorney or paralegal rate regardless of who performs them); *Harris v. L & L Wings, Inc*., 132 F.3d 978, 985 (4th Cir.1997) (secretarial tasks); *Abrams v. Baylor College*, 805 F.2d 528, 535-36 (5th Cir.1986) (clerical work); *Barrilleaux v. Thayer Lodging Group, Inc*., 1999 WL 397958, at *2 (E.D. La. June 11, 1999) (Livaudais, J.) (clerical and administrative tasks); *Inks v. Healthcare Distribs. of Ind., Inc*., 901 F.Supp. 1403, 1416 (N.D.Ind.1995) (delivery of documents); *A.N. v. Handy*, 1995 WL 571828, at *2 (N.D.Ill. Sept. 22, 1995) (mailing papers and filing pleadings).

[52]*See Walker,*99 F.3d at 773 (rejecting fee request that contained "terse listings" such as "library research," "phone interviews," *inter alia*, with no further explanation); *Von Clark v. Butler,* 916 F.2d 255, 259 n. 6 (5th Cir. 1990) (noting that certain entries were "scanty" and lacked sufficient explanatory detail).

substitute for the exercise of billing judgment.[53]

The Court recognizes that a substantial amount of work was accomplished, many hours were expended and that Cox's and Pearson's fee statements are *generally* well-documented. However, there are a number of entries – *i.e.*, "trial preparation and planning," and "work on trial exhibits" – which are too vague for the Court to determine whether they represent a reasonable use of time.[54]   After careful scrutiny of the record as a whole and particularly counsel's fee bill, this Court concludes that a 10% reduction in the number of hours claimed by Cox and a 5 % reduction in the number of hours claimed by Pearson constitute appropriate offsets to compensate for possible redundancy, clerical work billed at attorney's rate and work which may have been unnecessary in hindsight.[55]

### 2. Amount Involved and Degree of Success Obtained

In this regard, the Fifth Circuit has instructed that the trial judge must give adequate consideration to the result obtained relative to the fee award and the result obtained relative to

---

[53]*Walker,* 99 F.3d at 770; *Hopwood*, 236 F.3d at 279, n. 88.

[54]*See Walker,*99 F.3d at 773 (rejecting fee request that contained "terse listings" such as "library research," "phone interviews," *inter alia*, with no further explanation); *LP & L,*50 F.3d at 326 n. 11 (describing vague entries which were inadequate to support fee request); *Von Clark v. Butler,* 916 F.2d 255, 259 n. 6 (5th Cir. 1990) (noting that certain entries were "scanty" and lacked sufficient explanatory detail).

[55]*See Freiler v. Tangipahoa Parish Bd. of Education,* 185 F.3d 337, 349 (5th Cir. 1999) (noting that the failure to contemporaneously produce billing records does not preclude an award of fees as long as the evidence is adequate to determine reasonable hours and that the district court did not commit clear error when, instead of addressing the necessity and potential redundancy of each billed hour, it reduced the overall number of hours by ten percent), *cert. denied*, 530 U.S. 1251 (2000).

20

the result sought.[56]   Thus, the Court finds that an additional reduction is warranted based upon what the Supreme Court has characterized as the most critical *Johnson* factor in determining a fee award in a civil rights case – *i.e.*, the degree of success obtained by the plaintiff.

To recap, plaintiff's retaliation and defamation claims were dismissed on summary judgment and  plaintiff failed to prevail at trial on the merits on his separate failure to promote claim.  As noted at the outset, plaintiff was indeed successful on his bedrock claim, but no amount of professional chest-pounding or puffery can obscure the fact that plaintiff did not prevail on his failure to promote and retaliation claims.  As to plaintiff's ancillary claims[57] – race-based constructive discharge and intentional infliction of emotional distress – the evidence and discovery adduced in support of those claims is identical to that adduced in support of the plaintiff's successful racially hostile work environment claim.[58]   Accordingly, little, if any, adjustment is warranted on account of the plaintiff's failure to prevail on his claims of constructive discharge and intentional infliction of emotional distress, particularly considering the substantial general damage award of $80,000.00.  The Court has determined that an additional 15%  reduction in the number of hours claimed by Cox and an additional 5 % reduction in the number of hours claimed by Pearson sufficiently reflect the lack of success on the balance of plaintiff's claims.

---

[56]*See Farrar,* 506 U.S. at 114; *Hensley,* 461 U. S.  at 436;  *Migis,* 135 F.3d at 1048 (5th Cir. 1998) (noting that "the most critical factor is the degree of success obtained" and holding that "the district court abused its discretion by failing to give adequate consideration to the result obtained relative to the fee award and to the result obtained relative to the result sought").

[57]The Court here notes that the plaintiff's defamation claim was dismissed on summary judgment and was based entirely upon the same evidence adduced in support of his hostile work environment claim.

[58]*See* Notes 22-24, *supra*, and accompanying text.

Addressing the defendant's argument regarding the efficacy of plaintiff's medical evidence and testimony, the undersigned cannot give short-shrift to corroborative aspects of the medical evidence presented at trial.  Indeed, corroborative aspects of the aforesaid evidence may well account for the hefty eighty thousand dollar award for mental and emotional damages. Compensatory damages for emotional harm caused by discrimination may be awarded only when the plaintiff submits proof of actual injury and mental distress damages must be bolstered by evidence indicating a specific discernable injury to the plaintiff's emotional state.[59]  Absent evidence of medical treatment, general damages awarded by the jury may well have been for a modest or even a nominal amount.

Insofar as defendant contends that constructive discharge requires proof of economic damages, that is clearly not the law.  As aforestated, a successful constructive discharge claim is *generally* remedied by consideration of economic damages that an employee suffers because of the loss of his job.[60]  However, the failure of proof  with respect to economic damages is not necessarily fatal in an employment discrimination case.  A favorable verdict could include an award of nominal damages for the violation of a plaintiff's civil rights.

### 3. Calculation of the Lodestar

The Court computes the reasonable fees properly taxed against defendant pursuant to La.

---

[59]*See e.g., Hanley v. Doctors Hospital of Shreveport,* 821 So.2d 508, 525-24 (La. App. 2nd Cir. 2002) (affirming a general damage award of $100,000.00 for emotional distress for a sexual harassment claim in a case where plaintiff's friend, daughter and sister/*nurse* testified that the plaintiff was visibly affected and troubled by the harassment which caused her to feel anxious, upset and depressed).

[60]*See Robinson v. Healthworks International, LLC,* 837 So.2d 714, 719-20 (La. App. 2nd Cir. 2003).

R. S. 23:303A as follows:

**L. Stephen Cox**                              **Joan Pearson-Paralegal**

| | L. Stephen Cox | | Joan Pearson-Paralegal |
|---|---|---|---|
| | 329.10 hrs. | | 116.50 hrs. |
| - | 98.73 hrs. <30%> | - | 11.65 hrs. <10%> |
| | 230.37 hrs. | | 104.85 hrs. |
| X | $150.00 reasonable hourly rate | X | $55.00 reasonable hourly rate |

    **$34,555.50**          **PLUS**          **$5,766.75**    **=**    **$40,322.25 reasonable fees**

The undersigned finds that the result is reasonable and fair compensation based upon the totality of the facts and circumstances of this case.  The Court, having presided throughout the proceedings up to and including trial, is aware that facts overlapped between plaintiff's racially hostile work environment claim and his claims for constructive discharge, IIED, failure to promote and defamation claims.  The undersigned thus recognizes that plaintiff's racially hostile work environment claim did not exist in a vacuum.

Defendant was a tough competitor and vigorously contested liability, which it had a right to do.  However, these actions required plaintiff through his counsel to engage in conduct and incur costs to counter defendant's strategy and tactics which may not have otherwise been necessary.  The Court notes the extremely contentious nature of the lawsuit and that both parties equally engaged in conduct that necessarily resulted in additional attorney hours being expended. For example, even after the jury trial, the parties have ignored the Supreme Court's admonition that a request for attorney's fees should not result in a second major litigation.  The failure to exhaust all reasonable efforts to resolve the attorney's fee issue has unnecessarily consumed scarce judicial resources and delayed justice.

The Court has determined that the lodestar amount of reasonable hours multiplied by the reasonable rates set forth above (*i.e.*, $40,322.25) constitutes reasonable fees in this case and that

no further reduction or enhancement is required.  In making the aforesaid determination, the

Court has considered and applied all of the factors articulated in *Johnson*, as required by the

Fifth Circuit, to wit:

> *(1) Time and Labor Involved*
> This factor is part of the "lodestar" analysis and need not be considered again.  The discounted time (230.37 attorney hours plus 104.85 paralegal hours) is not excessive considering that the case proceeded to full trial on the merits, deposition discovery proceeded up to the time of trial and plaintiff's primary claim (racially hostile work environment) was hotly contested.

> *(2) Novelty and Difficulty of the Issues*
> This case was not particularly difficult.  None of the issues presented were particularly novel.  The only novelty about this case is the fact that racial harassment of this genre would be tolerated in the work place in this day and age.

> *(3) Skill Required*
> The Court finds that counsel was sufficiently skilled and otherwise qualified to pursue this case through trial on the merits.

> *(4)Preclusion of Other Employment*
> No evidence was submitted that suggests that counsel's work on this case precluded him from accepting new employment opportunities.

> *(5) Customary Fee*
> This factor is part of the "lodestar" analysis and need not be considered again.

> *(6) Whether the Fee is Fixed or Contingent*
> Apparently counsel billed an hourly rate as set forth above.

> *(7) The Time Limitations Imposed by the Client or Circumstances*
> No argument has been made and no evidence suggests that counsel was burdened by any significant time limitations.

> *(8) Amount Involved and Results Obtained*
> Counsel achieved success on his bedrock claim of racially hostile work environment, prevailed against the defendant on its affirmative defense and garnered a substantial general damage award in the amount of $80,000.00, but did not prevail on his ancillary claims or the separate claim of race-based failure to promote.  This factor was previously considered and made part of the "lodestar" analysis and need not be considered again. The Court discounted counsel's hours to account for the degree of success achieved.

> *(9) Experience, Reputation and Ability of the Attorneys*

This Court has already considered this factor in determining the "lodestar" analysis and it need not be considered again.

*(10) Undesirability of the Case*
This case was not undesirable.

*(11) Nature and Length of the Professional Relationship*
Cox has represented the plaintiff in this one case and this fact warrants neither enhancement nor reduction of the lodestar.

*(12) Awards in Similar Cases*
This Court has considered awards in similar Louisiana employment discrimination cases which proceeded to trial on the merits and considers the amount of $40,322.25 in attorney's fees in this case to be both in line and reasonable.[61]

### Court Costs

In addition to fees, the plaintiff requests an award of $2,269.85 in litigation costs.  In support of this request, plaintiff's counsel submitted the affidavit of his office manager, Pauline Cox, itemizing litigation expenses as follows, to wit:  (1) $276.12 in court costs and docket fees; (2) $1,605.75 in depositions and official transcripts; and (3) $387.98 in evidence preparation, printing and witness fees.   At the time of the hearing, plaintiff's counsel offered to supplement his submission with copies of actual invoices, which the Court permitted.[62]

---

[61]*See Dang v. M-I Holdings, LLC*, 2004 WL 2004696 (E. D. La. Sept. 7, 2004) (awarding $32,292.50 as reasonable attorney's fees in an employment discrimination case under La. R.S. 23:303A considering the *Johnson* factors and a jury verdict of $70,000.00 in general damages); *Motton v. Lockheed Martin Corp.,* 900 So.2d 901 (La. App. 4th Cir. 2005) (affirming the trial court's finding that (1) after the reductions for unsuccessful claims and the failure to use billing judgment,  Mr. Donelon's 567.9 hours  @ $200.00 an hour and Mr. Williams 9.25 hours @ $175.00 an hour for  were reasonably spent litigating Motton's sexual discrimination claim and (2) $115,198.75 constitutes reasonable attorney's fees incurred considering the jury award of $130,000.00 ($100,000 general damages and $30,000 economic damages) and further awarding plaintiff on application for rehearing additional attorney fees in the amount of $34,000.00 for work required to successfully litigate the matter on appeal), *cert. denied,* 904 So.2d 704 (La. 2005).

[62]*See* Plaintiff's Supplemental [Rec. Doc. No. 86].

Costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs."  Fed.R.Civ.P. 54(d).  A court may tax as costs only the following: (1) fees of the clerk of court and marshal; (2) court reporter fees for all or any part of stenographic transcripts "necessarily obtained for use" in the case; (3) fees for printing and witnesses; (4) fees for exemplification and copies of papers "necessarily obtained for use" in the case; (5) docket fees; and (6) compensation for court appointed experts. 28 U.S.C. § 1920. Allowable costs are limited to these categories and expenses that are not authorized by statute must be borne by the party incurring them.[63]

In this case, there is no reason to question that plaintiff paid $250.00 to file suit in the Twenty-Fourth Judicial District Court for the Parish of Jefferson and $26.12 for service upon the defendant through CT Corporation System in Baton Rouge, Louisiana.[64]   Said fees of the Clerk of Court of the Parish of Jefferson are recoverable as court costs within the meaning of Fed. R. Civ. P. 54(d) and LSA-R.S. 23:303A.  Additionally, witness fees tendered in the amount of $49.44 each to Donald Davis, Brady Perque, John Bourgeois, Pierre LaSalle and Anthony Pellitire are also recoverable.

Generally, copies of deposition transcripts are taxable costs if they are obtained for use in the case or for trial preparation and not simply for the convenience of counsel.[65]   Accordingly, the Court finds that deposition costs in the total amount of $1,605.75 itemized as follows are properly taxable as court costs, to wit: (1) Dr. Charles G. Schibler, II, M.D.-$65.35; (2) Rebecca

---

[63]*Dang v. M-I Holdings, LLC,* 2004 WL 2004696 * 3 (E. D. La. Sept. 7, 2004).

[64]*See* Notice of Removal/Petition for Damages (Rec. Doc. No. 1 at p. 8 of 32).

[65]*See Dibler v. Metwest, Inc.,* 1997 WL 222910 *16 (N. D. Tex. Apr. 29, 1997).

Nguyen, M.D.-$106.40; (3) Sandra L. Spedale, M.D.- $31.15; (4) Stacey Gibilterra, R.N.-$119.50; (5) Pierre LaSalle-$673.60;  and (6) Clara Braai/Anthony Pillitire/Nicholas Dinet-$609.75.

A review of the Pretrial Order (Rec. Doc. No. 61) confirms that the aforesaid deposition transcripts were necessarily obtained for use in the case.  The cost of a deposition is taxable if the court finds that "all or any part [of the deposition] was necessarily obtained for use in the case."[66]  A deposition need not be introduced into evidence for it to be considered necessary for the case.  As long as there is a reasonable expectation that the deposition may be used for trial preparation, it may be included in  costs.[67]

Because it is apparent from the record and the trial of the captioned matter that the aforesaid deposition transcripts were necessary for either or both trial preparation and presentation of plaintiff's case, plaintiff's deposition costs are properly included as costs.  With the exception of the Clara Braai (Hydril's Human Resource Specialist at its Westwego Facility) and Drs. Spedale and Schibler, all of the aforesaid deponents testified at trial either in person or by deposition.  All of the plaintiff's medical records were included as trial exhibits and defendant listed "any exhibit needed for impeachment" in the Pretrial Order.  Additionally, defendant listed Clara Braai as a "may call" witness.

The cost of trial exhibits (photographs) in the reasonable amount of $95.66[68] is also

---

[66]*Nissho-Iwai Co., Ltd. v. Occidental Crude Sales, Inc.,* 729 F.2d 1530, 1553 (5th Cir. 1984) (citations and internal quotation marks omitted).

[67]*Stearns Airport Equip. Co., Inc. v. FMC Corp.,* 170 F.3d 518, 536 (5th Cir. 1999).

[68]This amount includes the following, to wit: (1) $5.16 pictures/Walmart Invoice dated 9/17/06; (2) $10.70 photo paper/Walmart Invoice; and (3) $79.80 pictures/Walmart Invoice dated 9/21/06.

properly charged as court costs.[69]  Photographs of the work place graffiti constituted plaintiff's

best evidence of his central claim – *i.e.*,  a racially hostile work environment.  This Court

overruled the defendant's objections to the photographic evidence at issue.[70]   Insofar as plaintiff

seeks reimbursement for the cost of foamboard and  Line Color Plot # 27 Premium Bond, *inter*

*alia*, the expenses for such demonstrative exhibits are not properly taxable without the Court's

pretrial approval and no such demonstrative exhibits were listed in the pretrial order.[71]

Moreover, the plaintiff has not shown that such demonstrative aids were necessarily obtained for

use in litigation.

Finally, no evidence has been submitted tending to suggest that unidentified copies

obtained from the Clerk of Court for a fee in the total amount of $10.00 were necessary litigation

costs.  Plaintiff provides no explanation of the aforesaid expense and this Court cannot determine

whether said costs were necessary.  Accordingly, plaintiff's costs will be reduced by $10.00.  If a

party does not set out costs with sufficient particularity, a court may disallow them.[72]

Accordingly, plaintiff's request for costs is GRANTED IN PART as set forth below, to

wit:

$  276.00 Court Costs paid to 24th JDC
$  247.00 Witness Fees
$    95.66 Photographic Evidence

---

[69]*See Fogelman v. ARAMCO,* 920 F.2d 278, 286 (5th Cir. 1991) (holding that the taxability of copies of other documents is subject to the same standard as deposition copies).

[70]*See* Ruling on Defendant's Motion in Limine dated October 6, 2006 at p. 10 (Rec. Doc. No. 63);

[71]*See Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319, 335 (5th Cir. 1995); *Lovell v. Glen Oaks Hospital, Inc*., 1999 WL 1029091 * 4 (N. D. Tex. Nov. 10, 1999).

[72]*See Davis v. Commercial Union Ins. Co*., 892 F.2d 378, 385 (5th Cir.1990).

<u>$1,605.75</u> Deposition Costs
**$2,224.41 Total Taxable as Court Costs**

In sum, Plaintiff's Motion for Fees and Costs is GRANTED IN PART in the full amount

of $42,546.66 (*i.e.*,  $34,555.50 in Attorney Fees +  $5,766.75 in Paralegal Fees + $2,224.41

Court Costs), plus interest at the legal rate from the date of judgment.[73]  Additionally, plaintiff is

entitled to prejudgment interest at the legal rate on the award of emotional damages ($80,000.00)

from the date of judicial demand.[74]  An Amended Judgment shall be entered in accordance with

this opinion.

Considering the foregoing,

**IT IS ORDERED** that the defendant's Motion for New Trial is DENIED.

**IT IS FURTHER ORDERED** that the plaintiff's Motion for Fees and Costs is

GRANTED IN PART in the full amount of $42,546.66 with interest at the legal rate from date of

judgment.

New Orleans, Louisiana, this <u>22nd</u> day of November, 2006.


DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE

---

[73]*See Hanley v. Doctors Hospital of Shreveport,* 821 So.2d 508, 528 (La. App. 2nd Cir.
2002) (holding that the interest on an attorney fee award runs from the date of judgment
establishing the right to that award).

[74]*See Thomas v. Texas Department of Criminal Justice,* 297 F.3d 361, 372 (5th Cir. 2002)
(instructing that "prejudgment interest should apply to all past injuries, including past emotional
injuries" and that "refusing to award prejudgment interest ignores the time value of money and
fails to make the plaintiff whole").